IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: FLUIDMASTER, INC., WATER CONNECTOR COMPONENTS PRODUCTS LIABILITY LITIGATION** | Case No. 1:14-cv-05696<br>MDL No. 2575<br><br>Magistrate Judge Jeffrey T. Gilbert |
| This Document Relates to the Following Pending Action:<br><br>*AIG Property Casualty Company a/s/o Michael Kettenbach v. Fluidmaster, Inc.*<br>USDC Case No.: 1:17-cv-11020<br>Transferee Case No. 1:17-cv-4470 | |

## ORDER

Fluidmaster, Inc.'s Motion to Compel the Deposition of AIG Property Casualty Company with Production of Documents pursuant to F.R.C.P. 30(b)(6) [ECF No. 34] is granted in part and denied in part. See Statement below for further details.

## STATEMENT

Plaintiff AIG Property Casualty Company ("AIG") has sued Defendant Fluidmaster, Inc. ("Fluidmaster") as the subrogee of one its insureds, Michael Kettenbach ("Kettenbach"). Kettenbach purchased a water supply line made by Fluidmaster that allegedly was defective and failed. *See* Complaint and Demand for Jury Trial, [ECF No. 1-1]. On October 19, 2017, Fluidmaster served on AIG a notice titled Notice of Deposition of AIG Property Casualty Company with Production of Documents (FRCP 30(B)(6) (sic) ("Rule 30(b)(6) Notice"), [ECF No. 34-2]. This Rule 30(b)(6) Notice required that AIG designate and produce a witness or witnesses to testify about two subjects: (1) the "subrogation and adjustment of" Kettenbach's claim and (2) "[a]ll correspondence and other reports relating to" Kettenbach's claim. *Id.* at 2. The notice also directed AIG to produce four categories of documents. *Id.* at 3–5.[1] One document request sought the entire claims adjusting file pertaining to Kettenbach's claim. *Id.* at 3. The other three sought AIG's writings, written instructions, policies, procedures, and training manuals related to subrogation.[2] On November 15, 2017, AIG produced Michael Orlosky

---

[1] The document requests are contained in an attachment to the Rule 30(b)(6) Notice that is titled "Subpoena for Production of Records."

[2] To be more specific, the Rule 30(b)(6) Notice requested documents related to: 1) the conduct of a product investigation to determine whether to pursue a subrogation claim on a defective product theory; (2) the accumulation and preservation of evidence in a claim where subrogation is being considered; or (3) the training and instruction of AIG's employees regarding the accumulation and preservation of evidence for subrogation purposes in the course of adjusting a first party claim. Rule 30(b)(6) Notice, [ECF No. 34-2], at 4–5.

("Orlosky"), who was the first-party claims adjuster that adjusted Kettenbach's claim, as its Rule 30(b)(6) witness.

In the Motion to Compel now before the Court, Fluidmaster argues that AIG blocked discovery at Orlosky's deposition by not producing requested documents, instructing Orlosky not to answer questions, and not producing a proper witness to testify about the subrogation of Kettenbach's claim. Fluidmaster thus contends the Court should order AIG to: (1) produce an unredacted copy of AIG's file for Kettenbach's claim ("the claim file"); (2) have Orlosky sit for another deposition to answer questions regarding previously-redacted information in the claim file and AIG's recovery unit; (3) produce the documents pertaining to subrogation; (4) designate and produce another Rule 30(b)(6) witness to testify about the subrogation of Kettenbach's claim; and (5) pay $2,000 for the attorneys' fees and costs Fluidmaster will incur when it redeposes Orlosky. In response, AIG says Fluidmaster did not satisfy its obligation to meet and confer before filing its Motion to Compel. AIG also maintains its subsequent production of the unredacted claim file has mooted Fluidmaster's Motion to the extent it sought that relief. More broadly, AIG argues it did not improperly limit discovery, at least in a material way, during Orlosky's deposition. AIG says that, for all of these reasons, the Court should deny Fluidmaster's Motion in its entirety.

### 1. Fluidmaster's Meet and Confer Obligations

A motion to compel under Rule 37 of the Federal Rules of Civil Procedure "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Similarly, Local Rule 37.2 provides that a court "shall . . . refuse to hear any" motion to compel that does not include "a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's." N.D. ILL. R. 37.2.[3] The principle behind Local Rule 37.2 is that requiring an in person or telephonic meet and confer will "weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for disputes that truly cannot." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 2017 WL 3922175, at *4 (N.D. Ill. Sept. 7, 2017).

AIG argues the parties never engaged in the type of meet and confer required by Rule 37 and Local Rule 37.2 before Fluidmaster filed its Motion to Compel. Fluidmaster asserts, however, that the parties effectively met and conferred about the issues in its Motion even if they did not have a formal sit-down meeting. Fluidmaster says, for example, that, during the Rule 30(b)(6) deposition, counsel discussed the redactions to the claim file and Orlosky's refusal to

---

[3] This is not the only information that must be contained in the statement under the Local Rule 37.2. "Where the consultation occurred, [the] statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation." N.D. ILL. R. 37.2.

2

answer questions. Fluidmaster also points to the exchange of emails on November 21and 22 regarding a joint status report that referenced the potential need for motion practice with respect to the discovery issues raised in Fluidmaster's Motion. *See* Emails and Joint Status Reports, [ECF Nos. 37-4 to 37-8]. Finally, Fluidmaster relies on its counsel's statement during a status hearing held on November 30, 2017 that motion practice would be required. *See* Minute Entry Dated November 30, 2017, [ECF No. 33]. According to Fluidmaster, the discussion during the deposition, the email exchange, and the in-court statement were sufficient to satisfy its obligation to meet and confer.

The Court disagrees that Fluidmaster complied with Local Rule 37.2. Debating the merits of the redactions during a deposition, when AIG's counsel was unable to identify the basis for the redaction much less discuss the issue fulsomely, does not constitute a good faith effort to resolve that dispute. The Court particularly doubts that is the case because AIG's counsel said he would provide more information about the basis for the objection after the deposition (which could have prompted additional discussion). In any event, it is undisputed that the discussion between counsel during the deposition did not cover at least some of the issues raised in Fluidmaster's Motion, such as the production of documents related to subrogation. The Court also rejects the proposition that Fluidmaster satisfied its meet and confer obligations by saying in emails and in court that it may file a motion to compel. Local Rule 37.2 requires an in-person or telephonic meet and confer and cannot be satisfied by the exchange of emails. *Geraci v. Andrews*, 2017 WL 1822290, at *1 (N.D. Ill. May 5, 2017). Further, notifying another party that a dispute potentially may be the subject of motion practice does not amount to an attempt to *resolve* that dispute.

Although the Court perhaps could deny Fluidmaster's Motion because of the lack of an adequate meet and confer, the Court will not do so. The point of requiring a good faith attempt to resolve discovery disputes before the filing of a motion to compel is "'[t]o curtail undue delay and expense in the administration of justice.'" *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 2007 WL 2736681, at *2 (N.D. Ill. Sept. 10, 2007) (quoting N.D. ILL. R. 37.2); *see also* FED. R. CIV. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").[4] Based on the parties' briefs, it seems they already have resolved the one issue on which motion practice potentially could have been avoided by a proper meet and confer (*i.e.*, the production of the unredacted claim file). The parties still disagree about the other issues raised in Fluidmaster's Motion to Compel. Denying the Motion for failure to comply with Rule 37 and Local Rule 37.2 therefore likely would result in the parties engaging in a futile meet and confer and then file a motion and briefs that are the same or at least substantially similar to what they already have filed. That is not a good use of the parties' or the Court's time and resources.

---

[4] Rule 37(a)(5)(A)(i) prohibits a court from awarding the movant's reasonable expenses when a motion is granted but "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." FED. R. CIV. P. 37(a)(5)(A)(i). In other words, Rule 37 implicitly recognizes a motion to compel can be granted despite a movant's failure to meet and confer.

## 2. The Production of the Unredacted Claim File

At the Rule 30(b)(6) deposition, AIG produced a *redacted* version of Kettenbach's claim file. AIG had redacted eight lines of text in the roughly four-and-a-half-page document. Redacted Claim File, [ECF No. 34-3]. The redacted information was: (1) the subrogation file was assigned to Maryanne Kehoe; (2) no other insurance was identified as September 23, 2015; (3) it remained "TBD" whether any third parties were liable; (4) Orlosky secured the failed valve; (5) the potential for subrogation was "TBD"; and (6) Orlosky did not observe or recognize any salvage potential for the dwelling damaged and would see if there was salvage potential for the contents pending what was claimed. Unredacted Claim File, [ECF No. 36]. During the deposition, Fluidmaster's counsel asked AIG to produce an unredacted copy of the file and tried to ask Orlosky questions about what was redacted. Deposition of Michael Orlosky, [ECF No. 34-4], at 75. Orlosky testified at various times that he did not know what information was redacted. *Id.* at 75–76, 82. Also, AIG's counsel instructed Orlosky not to answer questions about the redacted information, and Orlosky complied with that instruction (except to the extent that he testified he did not know what was redacted). *Id.* at 78, 81.

During the deposition, AIG's counsel claimed in general terms that the redacted information was protected by the attorney-client privilege and the work product doctrine. *Id.* 76–81. When pressed by Fluidmaster's attorney, though, AIG's counsel admitted he did not "recall the reason exactly why it was" redacted and only professed to "believe" it was protected by either the attorney-client privilege or the work product doctrine, "maybe both." *Id.* at 78, 80. AIG's counsel said he could look into the issue more and provide an exact answer, presumably after the deposition. *Id.* at 80.

After Fluidmaster filed the Motion now before the Court, AIG decided it should not have redacted any information from the claim file and then produced an unredacted copy to Fluidmaster. Declaration of Craig A. Cohen in Support of Plaintiff's Opposition to Fluidmaster's Motion to Compel ("Opposition to Motion"), [ECF No. 35-1], ¶ 17. The Court agrees with AIG that the production of the unredacted claim file moots Fluidmaster's request that the Court order that document to be produced. Fluidmaster does not contend otherwise.

As should be clear from the above discussion, however, there is no legitimate excuse for AIG's failure to produce the unredacted claim file at the Rule 30(b)(6) deposition. AIG did not notify Fluidmaster in advance of the deposition that it would produce a redacted claim file. AIG's objections during the deposition were poorly explained and supported, and AIG's counsel did not provide the information required by Rule 26(b)(5)(A)(ii). AIG's inability to articulate a proper basis for withholding the information is not surprising given that AIG now admits the redactions were improper. Although AIG's subsequent production of the unredacted claim file has mooted Fluidmaster's request for that document, AIG's belated curative act does not necessarily leave it in the clear. As discussed below, AIG's failure to produce the unredacted claim file in time for the Rule 30(b)(6) deposition in part justifies some of the relief (in addition

claim file in time for the Rule 30(b)(6) deposition in part justifies some of the relief (in addition to the production of the unredacted claim file) that Fluidmaster is seeking in its Motion to Compel.

### 3. The Second Deposition of Orlosky

Fluidmaster says the Court should order Orlosky to sit for a second deposition. Fluidmaster's argument is premised largely on Orlosky refusal, at the direction of AIG's counsel, to answer questions about the redacted portions of the claim file or AIG's recovery unit. In response, AIG asserts the redacted information in the claim file was not "anything of real consequence." Opposition to Motion, [ECF No. 35-1], ¶ 19. AIG does not offer any substantive response to Fluidmaster's argument that Orlosky improperly refused to testify about AIG's recovery unit.

In the Court's view, AIG unjustifiably restricted Orlosky's testimony during the deposition. It is now undisputed that Fluidmaster should have been able to elicit testimony about the redacted portions of the claim file but was precluded from doing so by AIG's improper objection. Further, AIG's counsel instructed Orlosky during the deposition not to answer questions about his communications with AIG's recovery unit, asserting that information was privileged. *See* Deposition of Michael Orlosky, [ECF Nos. 34-4, 37-2], at 25, 81–82. In its opposition to the Motion to Compel, however, AIG does not defend its claim of privilege, and the Court thus understands AIG to have abandoned that position. Therefore, Fluidmaster was denied discovery it should have been permitted to take during the Rule 30(b)(6) deposition.

In determining whether Fluidmaster should be permitted to depose Orlosky a second time, the Court is focused on whether the benefit of imposing this sanction under Rule 37 is worth the burden of doing so. AIG is correct that the information redacted from the claim file is largely self-explanatory, basic, or indefinite. While that may limit the value of further testimony concerning that information, the Court is not convinced there would be no benefit. Moreover, AIG's recovery unit appears to have played an important role in Kettenbach's claim by providing instructions about how to preserve evidence and investigating the claim to determine, among other things, the cause of the loss. Deposition of Michael Orlosky, [ECF No. 35-6, 37-2], at 25, 28–29, 40. The benefit to be gained from additional testimony about this subject may be more significant. On the other side of the balance, there will be some burden from conducting another deposition. That burden, however, is necessitated by AIG's conduct and is not so significant as to justify depriving Fluidmaster of discovery it was entitled to take during the first Rule 30(b)(6) deposition.

For all these reasons, Orlosky shall sit for a second deposition, concerning the information redacted from the claim file and reasonable follow up.

### 4. The Production of AIG's Policies and Procedures

As already noted, AIG did not produce documents in response to three of the four document requests included in Fluidmaster's Rule 30(b)(6) Notice. The first document request

investigation to determine whether to pursue a subrogation claim on a defective product theory, including relative to corrosion burst failures." Rule 30(b)(6) Notice, [ECF No. 34-2], at 4. The second document request seeks written policies, procedures, or training manuals "pertaining to the accumulation and preservation of evidence in a claim where subrogation is being considered, including relative to corrosion burst failures." *Id.* at 4–5. The third document request seeks written instructions and training manuals "pertaining to the training and instruction of its employees regarding the accumulation and preservation of evidence for subrogation purposes in the course of adjusting a first party claim." *Id.* at 5. The Court will use the phrase "policies and procedures" to refer to the different types of documents sought in these three requests.

AIG does not raise a burden or proportionality objection to producing its policies and procedures. Instead, AIG makes three other points. AIG first says Orlosky provided "full," "truthful," and "credible" testimony regarding "the lack of" documents responsive to the three document requests summarized above. Opposition to Motion, [ECF No. 35], ¶¶ 28–29. During his deposition, Orlosky testified that he looked for but did not find any documents responsive to the first two document requests. Deposition of Orlosky, [ECF No. 35-6], at 37–38. According to Orlosky, his effort to locate responsive documents consisted of searching on an AIG "resource page that has all company protocols." *Id.* at 38. Orlosky's testimony about the third document request is somewhat confusing, and it is difficult to figure out whether he conducted a similar search with respect to that request. *Id.* at 39–40. He explicitly testified, though, that he was not aware of any documents responsive to the third document request. *Id.*

It is difficult to understand what point AIG is making when it characterizes this testimony as "full," truthful," and "credible." If AIG is representing that documents responsive to Fluidmaster's three document requests do not exist, then that would seem to settle the matter. The Court cannot and will not order AIG to produce non-existent documents. AIG, though, never directly says there are no such documents. Perhaps AIG means to say that, although responsive documents exist, Orlosky does not know about them. For instance, there may be responsive documents that are not listed on AIG's "resource page" or there may be responsive documents listed on the "resource page" that Orlosky simply overlooked. Orlosky's knowledge (or lack thereof) does not determine AIG's production obligations. If there are responsive documents that are discoverable under the Federal Rules of Civil Procedure, then AIG must produce them regardless of whether any particular Rule 30(b)(6) designee has independent knowledge of the existence of the documents.

Next, AIG contends its policies and procedures are not relevant to a claim or defense within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure. Fluidmaster has offered two theories of relevance. The first is that any deviation by AIG from its policies and procedures for deciding whether to bring a subrogation claim may indicate that the underlying product labiality claim against Fluidmaster is not meritorious. Fluidmaster's other theory of relevance is that AIG's policies and procedures for the accumulation and preservation of evidence will provide information about the condition of Kettenbach's coupling nut, which Fluidmaster says was in service for 15 years at the time of the failure and has deep gouge marks indicative of tightening with a tool. Fluidmaster also asserts Orlosky put the requested documents at issue in this case by testifying that AIG's recovery unit conducted an investigation

of Kettenbach's claim pursuant to protocols that are unknown to Orlosky. *See* Deposition of Orlosky, [ECF No. 37-2], at 29 ("How they proceed as the recovery team, I'm not familiar with their protocols specifically."). In response, AIG asserts in a conclusory manner that Fluidmaster's theories of relevance are "absurd," "illogical," and "mak[e] no sense whatsoever." Opposition to Motion, [EC No. 35-1], ¶ 30. AIG also contends that, because there is no evidence that *AIG* damaged Kettenbach's coupling nut, the requested documents are irrelevant and Fluidmaster is engaged in a fishing expedition with the intent to exert pressure on AIG to settle this case.

The Court disagrees with AIG's position that the requested documents are irrelevant. Fluidmaster's theory about deviations from AIG's policies and procedures is at least somewhat tenuous. But the condition of the subject coupling nut in this case indisputably is relevant to the parties' claims and defenses. Fluidmaster intends to defend this case by arguing that Kettenbach's coupling nut failed not because of any defect in the coupling nut, which had a label saying "Hand Tighten Only," but because the nut was overtightened with a tool. Because AIG conducted an investigation of Kettenbach's claim during which it secured and examined the coupling nut, AIG's policies and procedures regarding "a product investigation" and "the accumulation and preservation of evidence" may contain relevant information. Although AIG says there is not a dispute between the parties as to whether AIG damaged the subject coupling nut, that does not make its policies and procedures irrelevant. At best, that point could be the basis of a burden or proportionality objection and thereby justify limiting the extent and expense of discovery regarding AIG's policies and procedures. Again, though, AIG does not raise a burden or proportionality objection and, instead, only challenges Fluidmaster's document requests on the basis of relevance.

Finally, AIG notes that Fluidmaster did not request any documents related to subrogation in the set of Rule 34 requests for production that Fluidmaster served in June 2017. The Court does not see why this fact is of any consequence. Rule 30 of the Federal Rules of Civil Procedure expressly provides that a Rule 30(b)(6) "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents . . . at the deposition." FED. R. CIV. P. 30(b)(2). AIG does not say that, much less explain why, Fluidmaster's decision not to seek the documents in June precluded them from doing so later when serving the Rule 30(b)(6) notice. After all, fact discovery in this case did not close until November 21, 2017, and the Court did not set a separate deadline for written discovery. Minute Entry Dated June 26, 2017, [ECF No. 17].

For all of these reasons, AIG shall produce documents, if any exist, that are responsive to the document requests in Fluidmaster's Rule 30(b)(6) Notice.

## 5. The Designation of A Different Rule 30(b)(6) Witness to Testify about the Subrogation of Kettenbach's Claim

Fluidmaster argues Orlosky was not a proper Rule 30(b)(6) witness on the subject of the subrogation of Kettenbach's claim. Under Rule 30(b)(6), a corporation has "a duty . . . to designate an individual to testify who has knowledge responsive to the subjects requested in

7

the Rule 30(b)(6) notice." *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013). "The persons designated must testify about information known or reasonably available to *the organization*." FED. R. CIV. P. 30(b)(6) (emphasis added). To ensure a knowledgeable witness is produced on each subject listed in a Rule 30(b)(6) notice, a corporation may need to designate multiple witnesses. *See In re Sulfuric Acid Antitrust Litig.*, 2005 WL 1994105, at *3 (N.D. Ill. Aug. 19, 2005) ("As the instant case demonstrates, Rule 30(b)(6) deposition notices routinely specify a number of topics of inquiry, which often necessitate the designation of multiple witnesses.").

In this case, one of the two subjects listed in Fluidmaster's Rule 30(b)(6) notice was the "*[s]ubrogation* and adjustment" of Kettenbach's claim. Rule 30(b)(6) Notice, [ECF No. 34-1], at 2 (emphasis added). During the Rule 30(b)(6) deposition, Orlosky testified the file for Kettenbach's claim had been closed to him for two years, and it was unclear from his testimony whether Orlosky had seen part (much less all) of AIG's subrogation file for Kettenbach's claim. Deposition of Orlosky, [ECF No. 37-2], at 35, 43. Orlosky said he did not know "where subrogation stands at this point" and did not know "who is involved in subrogation." *Id.* at 35–36. Most strikingly, when asked whether he knew "anything about the subrogation of this claim," Orlosky answered, "No, I don't." *Id.* at 36. In light of this testimony, it seems indisputable that Orlosky was not a proper witness under Rule 30(b)(6) on the subject of the subrogation of Kettenbach's claim. In fact, AIG does not even claim Orlosky was knowledgeable about this subject and could provide the testimony requested in Fluidmaster's Rule 30(b)(6) notice.

In its opposition to the Motion to Compel, AIG does not directly address Fluidmaster's argument that AIG failed to comply with its obligation to produce an adequate Rule 30(b)(6) witness to testify about the subrogation of Kettenbach's claim. Instead, AIG raises a couple points tangentially related to the issue. AIG notes that, in a letter accompanying the Rule 30(b)(6) notice, Fluidmaster's attorney said Fluidmaster would need a depose a designated witness "regarding the investigation and adjustment" of the claim. Letter from Ernest Weiss to David Buishas and Peter Sass Dated October 19, 2017 ("Letter"), [ECF No. 35-10]. Of course, the reference to "investigation and adjustment" in the letter does not change the fact that the notice itself, which is the operative document for the purposes of Rule 30(b)(6), listed the "*subrogation* and adjustment" of Kettenbach's claim as a subject for examination. AIG also points out that Fluidmaster did not object prior to the deposition when told Orlosky would be AIG's Rule 30(b)(6) witness. The lack of an objection at that time, however, does not mean much because there is no reason to believe Fluidmaster knew whether Orlosky was knowledgeable about the subrogation of Kettenbach's claim. After all, AIG had a duty under Rule 30(b)(6) to designate a witness who was knowledgeable about that subject. Therefore, AIG has not provided any persuasive reason why it should not now be required to do what it should have done at the first Rule 30(b)(6) deposition: produce an appropriate witness to testify about the subrogation of Kettenbach's claim.

One final issue needs to be addressed. In its Motion, Fluidmaster asks the Court to require that AIG designate the person "most knowledgeable" regarding the subrogation of

Kettenbach's claim.[5] Fluidmaster does not explain what legal authority allows it to demand that the designee be the person "most knowledgeable." As courts repeatedly have pointed out, Rule 30(b)(6) does not require a corporation to designate "the most knowledgeable witness available." *Endotach LLC v. Cook Med. Inc.*, 2014 WL 12753789, at *4 (S.D. Ind. May 16, 2014); *see also Aldridge v. Lake Cty. Sheriff's Office*, 2012 WL 3023340, at *4 (N.D. Ill. July 24, 2012) ("[T]he most knowledgeable person is not required under the rule."). Instead, the designated witness "need only be competent to testify about information 'known or reasonably available to the corporation.'" *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 13077072, at *2 (E.D. Wis. June 27, 2011). Therefore, the Court only orders AIG to produce an appropriate Rule 30(b)(6) witness on the subject of the subrogation of Kettenbach's claim.

### 6. Fluidmaster's Attorneys' Fees and Costs

Fluidmaster argues the Court should order AIG, as a sanction, to pay Fluidmaster $2,000 for the reasonable expenses that Fluidmaster will incur in conducting a second deposition of Orlosky. Fluidmaster contends this sanction is justified under Rule 37(d) of the Federal Rules of Civil Procedure. Under this provision, when a party's Rule 30(b)(6) designee fails to appear for his deposition, the Court must require the party failing to act (and/or his attorney) to pay the reasonable expenses "caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3).

The Court rejects Fluidmaster's argument for a few reasons. As an initial matter, the Court is not convinced Rule 37(d) applies in this instance. Fluidmaster only is asking to be reimbursed for the expenses incurred because it has to redepose Orlosky, and, thus, the relevant wrongful conduct that could justify the requested sanction is AIG's refusal to allow Orlosky to testify about subrogation recovery during his first deposition. Refusing to answer a question is not the same thing as a failing to appear, and Rule 37(d) does not apply when a witness appears but refuses to answer a question. *See Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995) ("Estrada attended his deposition but refused to testify. This is not a 'failure to appear' for the purposes of Rule 37(d)."); *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991) ("Refusing to answer specific questions is, of course, to be distinguished from failing to attend the deposition—a situation covered by Rule 37(d)."); *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir. 1983) ("Since the plaintiff in this case did *appear* for his deposition (though he then refused to answer any questions), we conclude that dismissal under Rule 37(d) would not have been appropriate.").

Even if Rule 37(d) did apply in this case, the circumstances of this case would make an award of expenses unjust. The Court is ordering AIG to produce all of the discovery that Fluidmaster was wrongfully denied and is seeking in its Motion to Compel. If Fluidmaster also were awarded all of the attorney's fees it is requesting, then Fluidmaster would get everything it wants despite its failure to meet and confer. Fluidmaster's violation of Rule 37(a)(1) and Local

---

[5] Fluidmaster's attorney requested in the letter accompanying the Rule 30(b)(6) notice that AIG designate the personnel "most knowledgeable" about the investigation and adjustment of the claim. Letter, [ECF No. 35-10].

Rule 37.2 should not be without any consequence.  It therefore would be just to deny Fluidmaster's request for $2,000 in reasonable expenses because of Fluidmaster's own failure to comply with the Federal Rules of Civil Procedure (and the Local Rules).  The propriety of protecting the integrity of Rule 37 by denying an award of reasonable expenses in a circumstance such as this is confirmed by Rule 37(a)(5)(A)(i), which prohibits the award of reasonable expenses when a motion is granted but the movant filed the motion "before attempting in good faith to obtain the disclosure or discovery without court action." FED. R. CIV. P. 37(a)(5)(A)(i).

For all of these reasons, Fluidmaster's Motion to Compel [ECF No. 34] is granted in part and denied in part.  The parties are granted leave to conduct the fact discovery ordered herein after the formal close of fact discovery.  If a party believes any dates set by the Court, including those for expert discovery and the filing of dispositive motions, need to be adjusted to accommodate this discovery, that party should file an appropriate motion or the parties together should file a stipulation as to any revised dates to which they agree.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 22, 2018